**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| BOURNE VALLEY COURT TRUST, | No. 15-15233 |
| *Plaintiff-Appellee*, | |
| | D.C. No. |
| v. | 2:13-cv-00649-PMP-NJK |
| WELLS FARGO BANK, NA, | OPINION |
| *Defendant-Appellant.* | |

Appeal from the United States District Court
for the District of Nevada
Philip M. Pro, Senior District Judge, Presiding

Argued and Submitted June 13, 2016
San Francisco, California

Filed August 12, 2016

Before: J. Clifford Wallace, Dorothy W. Nelson,
and John B. Owens, Circuit Judges.

Opinion by Judge D.W. Nelson;
Dissent by Judge Wallace

2     BOURNE VALLEY COURT TRUST V. WELLS FARGO

## SUMMARY[*]

### Nevada Foreclosures

The panel vacated the district court's summary judgment entered in favor of Bourne Valley Court Trust in the Trust's action to quiet title on real property that it had acquired after the property had been foreclosed by a homeowners' association.

Nevada Revised Statutes section 116.3116 *et seq.* strips a mortgage lender of its first deed of trust when a homeowners' association ("HOA") forecloses on the property based on delinquent HOA fees.

The panel held that the Statute's "opt-in" notice scheme, which required a HOA to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice, facially violated the lender's constitutional due process rights under the Fourteenth Amendment to the Federal Constitution. The panel held that the "state action" requirement for purposes of constitutional due process was met by the Nevada Legislature's enactment of the Statute, which unconstitutionally degraded the mortgage lender's interest in the property. The panel remanded for further proceedings.

Judge Wallace dissented because he would hold there was no state action, and because the Statute satisfied due process by incorporating another provision in the Nevada Revised

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Statues that required HOAs to provide written notice to a mortgage lender.

## COUNSEL

Andrew M. Jacobs (argued), Snell & Wilmer L.L.P., Tucson, Arizona; Amy F. Sorenson, Snell & Wilmer L.L.P., Salt Lake City, Utah; Kelly H. Dove, Snell & Wilmer L.L.P., Las Vegas, Nevada; for Defendant-Appellant.

Michael F. Bohn (argued), Law Offices of Michael F. Bohn, Esq., Ltd., Las Vegas, Nevada, for Plaintiff-Appellee.

## OPINION

D.W. NELSON, Circuit Judge:

Nevada Revised Statutes section 116.3116 *et seq.* (the Statute)[1] strips a mortgage lender of its first deed of trust when a homeowners' association forecloses on the property based on delinquent HOA dues. Before it was amended, it did so without regard for whether the first deed of trust was recorded before the HOA dues became delinquent, and critically, without requiring actual notice to the lender that the homeowners' association intends to foreclose.

---

[1] As discussed below, the Nevada Legislature recently amended the Statute. *See infra* footnote 4. Unless otherwise stated, all references to the Statute are to the unamended version, which all parties agree applies to this action.

We hold that the Statute's "opt-in" notice scheme, which required a homeowners' association to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice, facially violated the lender's constitutional due process rights under the Fourteenth Amendment to the Federal Constitution. We therefore vacate the district court's judgment and remand for proceedings consistent with this opinion.

## BACKGROUND

This case arises out of an action to quiet title to real property located at 410 Horse Pointe Avenue (the Property) purchased at a homeowners' association foreclosure auction in North Las Vegas, Nevada.

Renee Johnson, the original homeowner, purchased the Property in 2001 with a loan for $174,000 from Plaza Home Mortgage, Inc. (Plaza). The Property is part of a planned development governed by the Parks Homeowners' Association (Parks). Plaza recorded a deed of trust securing a note on the property, and Appellant Wells Fargo was assigned all beneficial interest in the note and deed of trust in February 2011.

Johnson fell behind on payments for her HOA dues, and Parks recorded a Notice of Delinquent Assessment Lien on August 30, 2011. The total amount due was $1,298.57. On October 12, 2011, Parks recorded a Notice of Default and Election to Sell. On April 9, 2012, Parks recorded a Notice of Trustee/Foreclosure Sale against the Property.

On May 22, 2012, a Trustee's Deed Upon Sale was recorded, reflecting that Horse Pointe Avenue Trust paid

$4,145 at the homeowners' association foreclosure sale. Horse Pointe Avenue Trust conveyed its interest in the Property to Appellee Bourne Valley Court Trust (Bourne Valley).

Bourne Valley filed an action to quiet title in Nevada state court. The action was removed to the federal district court for the District of Nevada pursuant to 28 U.S.C. § 1441. The district court granted summary judgment for Bourne Valley.

The district court's ruling was based largely on the Nevada Supreme Court's decision in *SFR Investments Pool 1 v. U.S. Bank*, 334 P.3d 408 (Nev. 2014). There, the Nevada Supreme Court interpreted the Statute to give a homeowners' association a "super priority" lien on an individual homeowner's property for up to nine months of unpaid HOA dues. 334 P.3d at 419. As the Nevada Supreme Court interpreted the Statute, the foreclosure of a homeowners' association "super priority" lien extinguished all junior interests in the property, including even a mortgage lender's first deed of trust. Thus, following the Nevada Supreme Court's interpretation of the Statute, the district court held that Parks's foreclosure extinguished Wells Fargo's interest in the Property.

Wells Fargo timely appealed.

## JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction pursuant to 28 U.S.C. § 1291.

6     BOURNE VALLEY COURT TRUST V. WELLS FARGO

We review a district court's order granting summary judgment *de novo*. *Fed. Deposit Ins. Corp. v. New Hampshire Ins. Co*, 953 F.2d 478, 485 (9th Cir. 1991).

## ANALYSIS

### I.   The Statute was facially unconstitutional.

Before explaining why the Statute's notice scheme rendered the Statute unconstitutional, we first review how the Statute would have otherwise permitted a homeowners' association lien foreclosure to extinguish a mortgage lender's first deed of trust.

Section 116.3116(2) set forth the priority of the homeowners' association lien with respect to other liens. Pursuant to that section, a homeowners' association lien took priority over all other liens except:

> (a) Liens and encumbrances recorded before the recordation of the declaration and, in a cooperative, liens and encumbrances which the association creates, assumes or takes subject to;

> (b) A first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent . . . ; and

> (c) Liens for real estate taxes and other governmental assessments or charges against the unit or cooperative.

Thus, section 116.3116(2)(b) ordinarily made a first deed of trust superior to a homeowners' association lien. However, section 116.3116(2) gave "super priority" to the portion of a homeowners' association's lien for dues owed in the 9 months immediately proceeding an action to enforce the lien:

> The lien is also prior to all security interests described in paragraph (b) to the extent of any charges incurred by the association on a unit pursuant to NRS 116.310312 and to the extent of the assessments . . . which would have become due in the absence of acceleration during the 9 months immediately preceding institution of an action to enforce the lien . . . .

N.R.S. section 116.3112(2)(c).

In *SFR Investments*, the Nevada Supreme Court held that foreclosure of a "super priority" lien under § 116.3116(2) extinguished all junior interests, including a first deed of trust. 334 P.3d at 410–14. As noted, the district court relied on *SFR Investments* in concluding that Parks's lien foreclosure extinguished Wells Fargo's interest in the Property. The district court explained that because Bourne Valley had shown that the required statutory notices were sent, and because Wells Fargo did not present evidence that it did not receive notice,[2] Wells Fargo's due process

---

[2] We note the practical difficulty Wells Fargo or any mortgage lender faces in trying to prove that it did not receive notice. *See Elkins v. United States*, 364 U.S. 206, 218 (1960) ("[A]s a practical matter it is never easy to prove a negative.").

challenge failed. The district court did not address whether the Statute's notice scheme was facially unconstitutional.[3] We turn to that question now.

### A. The Statute impermissibly shifted the burden to mortgage lenders, requiring them to affirmatively request notice.

Before its amendment, the Statute employed a peculiar scheme for providing mortgage lenders with notice that a homeowners' association intended to foreclose on a lien. Even though such foreclosure forever extinguished the mortgage lenders' property rights, the Statute contained "opt-in" provisions requiring that notice be given only when it had already been requested. *See, e.g.*, N.R.S. section 116.31163(2) (requiring notice of default and election to sell be mailed to "any holder of a security interest encumbering the unit's owner's interest who has notified the association, 30 days before the recordation of the notice of default, of the security interest"). Thus, despite that only the homeowners' association knew when and to what extent a homeowner had defaulted on her dues, the burden was on the mortgage lender to ask the homeowners' association to please keep it in the loop regarding the homeowners' association's foreclosure plans. How the mortgage lender, which likely had no relationship with the homeowners' association, should have known to ask is anybody's guess, and indeed Bourne Valley

---

[3] We do not fault the district court for this omission. Wells Fargo's due process challenge has evolved in this case. While it apparently made only an as-applied challenge before the district court, it raises a facial challenge on appeal. Nevertheless, Bourne Valley does not argue that Wells Fargo waived any facial challenge, and it is "well-established that a party can waive waiver." *Norwood v. Vance*, 591 F.3d 1062, 1068 (9th Cir. 2009) (internal quotation marks and citations omitted).

offers no arguments here.  But this system was not just strange; in our view, it was also unconstitutional.

Before it takes an action that will adversely "affect an interest in life, liberty, or property . . . , a State must provide 'notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 795 (1983) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).  Moreover, "[n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable." *Id.* at 800 (emphasis in original).

We have never addressed the constitutionality of an "opt-in" notice scheme like the one provided for in the Statute. Another court of appeals has, finding that "opt-in" notice does not pass muster.

In *Small Engine Shop, Inc. v. Cascio*, the Fifth Circuit Court of Appeals concluded that an "opt-in" notice clause contained in Louisiana's real property foreclosure statute could not satisfy due process requirements.  878 F.2d 883 (5th Cir. 1989).  The clause at issue provided that actual notice of seizure of real property was required for only those who requested it.  Citing *Mennonite*, the court explained that it would be unconstitutional for the state by statute to "prospectively shift the entire burden of ensuring adequate notice to an interested property owner regardless of the

10    BOURNE VALLEY COURT TRUST V. WELLS FARGO

circumstances." *Id.* at 884 (citing *Mennonite*, 462 U.S. at 797).

The Statute we address here is similar. Like the provision at issue in *Small Engine Shop*, the Statute shifted the burden of ensuring adequate notice from the foreclosing homeowners' association to a mortgage lender. It did so without regard for: (1) whether the mortgage lender was aware that the homeowner had defaulted on her dues to the homeowners' association, (2) whether the mortgage lender's interest had been recorded such that it would have been easily discoverable through a title search, or (3) whether the homeowners' association had made any effort whatsoever to contact the mortgage lender. In our view, such a scheme was not constitutional.

Bourne Valley argues that Nevada Revised Statutes section 107.090 should be read into the Statute and that its provisions cure the deficiency we have identified. We disagree.

Section 107.090 governs the notice required for the default and sale of a deed of trust. Subsection 107.090(3) requires the trustee or person authorized to record the notice of default to send a copy of the notice by registered or certified mail to each "person with an interest whose interest or claimed interest is subordinate to the deed of trust." N.R.S. section 107.090(3)(b).

Bourne Valley argues that Nevada Revised Statute section 116.31168(1), which incorporated section 107.090, mandated actual notice to mortgage lenders whose rights are subordinate to a homeowners' association super priority lien. Section 116.31168(1) stated, "[t]he provisions of NRS

107.090 apply to the foreclosure of an association's lien as if a deed of trust were being foreclosed." According to Bourne Valley, this incorporation of section 107.090 means that foreclosing homeowners' associations were required to provide notice to mortgage lenders even absent a request.

Bourne Valley's preferred reading would impermissibly render the express notice provisions of Chapter 116 entirely superfluous. *See S. Nev. Homebuilders Ass'n v. Clark County*, 117 P.3d 171, 173 (Nev. 2005) (a statute must be interpreted "in a way that would not render words or phrases superfluous or make a provision nugatory") (internal quotation marks omitted). In particular, section 116.31163 and section 116.31165 required any secured creditor to request notice of default from a homeowners' association before the homeowners' association had any obligation to provide such notice. If section 116.31168(1)'s incorporation of section 107.090 were to have required homeowners' associations to provide notice of default to mortgage lenders even absent a request, section 116.31163 and section 116.31165 would have been meaningless. We reject Bourne Valley's argument.[4]

---

[4] The Nevada Legislature recently amended the Statute, requiring homeowners' associations to provide holders of first deeds of trust (and all others with recorded interests) with notice of default and notice of sale even when notice has not been requested. S.B. 306 (Nev. 2015). Such amendment provides further evidence that the version of the Statute applicable in this action did not require notice unless it was requested. If the Statute already required homeowners' associations affirmatively to provide notice, there would have been no need for the amendment.

### B.  The "state action" requirement is satisfied.

Bourne Valley's strongest argument is that there has been no "state action" for purposes of constitutional due process.

We think the "state action" requirement has been met.  A "state action requires *both* an alleged constitutional deprivation caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible, *and* that the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation marks and citation omitted).

In this context, where the mortgage lender and the homeowners' association had no preexisting relationship, the Nevada Legislature's enactment of the Statute is a "state action."  It is true, as Bourne Valley contends, that the foreclosure sale itself is a private action.  And we acknowledge that there is no state action here that "encourages" or "compels" a homeowners' association to foreclose on a property. *Apao v. Bank of New York*, 324 F.3d 1091, 1094 (9th Cir. 2003).

But that the foreclosure sale itself is a private action is irrelevant to Wells Fargo's due process argument.  Rather than complaining about the foreclosure specifically, Wells Fargo contends—and we agree—that the enactment of the Statute unconstitutionally degraded its interest in the Property.  Absent operation of the Statute, Wells Fargo would have had a fully secured interest in the Property.  A foreclosure by a homeowners' association would not have extinguished Wells Fargo's interest.  But with the Statute in

place, Wells Fargo's interest was not secured.  Instead, if a homeowners' association foreclosed on a lien for unpaid dues, Wells Fargo would forfeit all of its rights in the Property.  In our view, the "state action" requirement is satisfied.

Bourne Valley's reliance on *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149 (1978) and *Charmicor, Inc. v. Deaner*, 572 F.2d 694 (9th Cir. 1978) is misplaced.  Both of those cases addressed the "state action" requirement and found that it was not met where a private creditor enforced its contractual rights.  But unlike in this case, in each of those cases, the parties had a preexisting contractual relationship as creditor and debtor.  *See Flagg Bros., Inc.*, 436 U.S. at 153 (noting parties' contractual relationship); *Charmicor*, 572 F.2d at 695 (noting that nonjudicial foreclosure statute conferred power of sale to trustee after breach of the "underlying obligation" by the debtor).  The creditors' authority to extinguish the debtors' property rights arose out of the parties' contractual relationships.  Here, Wells Fargo and the foreclosing homeowners' association had no preexisting relationship, contractual or otherwise.  Indeed, it is unclear if they were even aware of each other's existence.  Thus, in contrast to the creditors in *Flagg Brothers* and *Charmicor*, the homeowners' association's ability to extinguish Wells Fargo's interest in the Property arose directly and exclusively from the Statute.

## CONCLUSION

Nevada Revised Statutes section 116.3116's "opt-in" notice scheme facially violated mortgage lenders' constitutional due process rights.  We therefore **VACATE** the

14    BOURNE VALLEY COURT TRUST V. WELLS FARGO

district court's judgment and remand for proceedings consistent with this opinion.

**VACATED and REMANDED.**

WALLACE, J., dissenting

The majority holds that section 116.3116 *et seq.* of the Nevada Revised Statutes (HOA Statute) is facially unconstitutional because it fails to satisfy the Fourteenth Amendment's Due Process Clause. I dissent for two reasons. First, both the Supreme Court's case law and our own precedent make it clear that for a due process challenge to succeed, the challenger must show that there has been "overt official involvement," or, in other words, state action. Because there has been no state action here, I would hold that Wells Fargo's challenge necessarily fails. Second, even were there sufficient state action to implicate the Due Process Clause, the HOA Statute satisfies due process because it incorporates another provision in the Nevada Revised Statutes that requires the homeowners' association (HOA) to provide written notice to a mortgage lender.

I.

A foundational principle for all constitutional law is that "most rights secured by the Constitution are protected only against infringement by governments." *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978). Thus, "[w]hile as a factual matter any person with sufficient physical power may deprive a person of his property, only a State or a private person whose action may be fairly treated as that of the State itself,

BOURNE VALLEY COURT TRUST V. WELLS FARGO    15

may deprive him of an interest encompassed within the Fourteenth Amendment's protection." *Id.* at 157 (internal quotation marks omitted). This understanding has led to what is commonly termed the state action requirement. To determine whether there has been state action, the Supreme Court has "insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). The fair-attribution test has two parts: (1) "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible," and (2) "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.*

Here, only the second part of the fair-attribution test is at issue, since there is no doubt that the deprivation Wells Fargo has alleged was caused by Bourne Valley's exercise of "some right or privilege" created by Nevada's HOA Statute. *Id.* But that still leaves the second part of the test, that is, whether Bourne Valley "may fairly be said to be a state actor." *Id.* The answer to that question is no.

The majority concedes, as it must, that the nonjudicial foreclosure sale that resulted in Bourne Valley obtaining title to the property does not count as state action. This makes common sense: an HOA is not a government actor and a nonjudicial foreclosure by definition takes place without government involvement. So, if the foreclosure itself does not constitute state action, how then does the majority reach the merits of the Due Process issue? It does so by holding "that the enactment of the [HOA] Statute unconstitutionally degraded its interest in the Property." This holding is faulty in several respects.

First, it is wrong as a matter of timing. The HOA Statute cannot possibly have "degraded" Wells Fargo's interest in the property because it was passed long before the bank acquired its interest. The Nevada legislature passed the HOA Statute in 1991; Wells Fargo's mortgage interest was created in 2006.[1] Given this timing, how can the majority claim that the "enactment" of the HOA Statute "degraded" Wells Fargo's interest?

The second, and more critical, problem with the majority's holding is that it misapplies the case law. In *Apao v. Bank of New York*, we dealt with a due process challenge to a Hawaii statute that authorized a lender to exercise a contractual right to nonjudicial foreclosure if the borrower defaulted on the loan. 324 F.3d 1091, 1092–93 (9th Cir. 2003). In rejecting that argument, we reviewed the Supreme Court's cases involving foreclosures or seizures of property to satisfy a debt, and we concluded that "the Supreme Court has held that the procedures implicate the Fourteenth Amendment only where there is at least some direct state involvement in the execution of the foreclosure or seizure." *Id.* at 1093.

To illustrate how the Court has applied that rule, we cited several cases where the Court concluded there was state action. In one case, the Court held there was state action where a clerk of court issued a writ of replevin authorizing a sheriff to seize property. *Fuentes v. Shevin*, 407 U.S. 67, 70–71 (1972). In another, the Court held there was sufficient

---

[1] The HOA Statute has been amended multiple times since 1991. However, since the beginning it has provided that an HOA lien is prior to a first security interest "to the extent of the assessments for common expenses." NEV. REV. STAT. § 116.3116(2) (1991).

state involvement where a clerk of court issued a summons at the request of a creditor, which allowed the creditor to garnish an individual's wages. *Sniadach v. Family Fin. Corp. of Bay View*, 395 U.S. 337, 338–40 (1969). Last, in *Lugar*, the Court held there was state action where a sheriff sequestered property upon executing a creditor's petition for a writ of prejudgment attachment. 457 U.S. at 924–25. The common thread among these three cases is that each involved a government actor taking some official action.

By contrast, the Court had concluded there was insufficient state involvement to support satisfaction of the state action requirement where a creditor enforced a lien through a nonjudicial sale. *Flagg Bros., Inc.*, 436 U.S. at 152–53. Importantly for the case before us, the Court reached its holding even though the creditor derived its power to conduct the sale from a state statute that delegated "to the [creditor] a portion of its sovereign monopoly power." *Id.* at 155 (internal quotation marks omitted). We described the Court's reasoning in *Flagg Brothers* as follows:

> *Flagg Bros.* further held that the state's statutory authorization of self-help provisions is not sufficient to convert private conduct into state action. The statute neither encourages nor compels the procedure, but merely recognizes its legal effect. The state has not compelled the sale of a [debtor's property], but has merely announced the circumstances under which its courts will not interfere with a private sale.

*Apao*, 324 F.3d at 1094 (internal quotation marks and citations omitted). In short, *Flagg Brothers* came out the way

18    BOURNE VALLEY COURT TRUST V. WELLS FARGO

it did because there was no "overt official involvement."
*Apao*, 324 F.3d at 1095 (internal quotation marks omitted).

Returning to our decision in *Apao*, after tracing the
Supreme Court's case law, we then applied it to the Hawaii
statute. We concluded that the facts were analogous to *Flagg
Brothers* because nonjudicial foreclosure procedures lack any
"overt official involvement." *Id.* (quoting *Flagg Bros., Inc.*,
436 U.S. at 157).

*Apao* is also important because we rejected a broader
theory of state action that the borrower proposed. The
borrower in *Apao* made an argument similar to the one Wells
Fargo has made here: that government regulation of the
mortgage business converted any action by a lender into state
action. *Id.* We rejected that argument, holding that "the
development of the extensively regulated secondary mortgage
market does not convert the private foreclosure procedures at
issue here into state action." *Id.* We explained that "'[s]tatutes
and laws regulate many forms of purely private activity, such
as contractual relations and gifts, and subjecting all behavior
that conforms to state law to the Fourteenth Amendment
would emasculate the state action concept.'" *Id.* (quoting
*Adams v. S. Cal. First Nat'l Bank*, 492 F.2d 324, 330–31 (9th
Cir. 1974)).

The Supreme Court's decisions in *Fuentes*, *Sniadach*,
*Lugar*, and *Flagg Brothers*, dictate that we conclude there has
been no state action in this case. There has been no "overt
official involvement": no government actor was in any way
involved in the nonjudicial foreclosure that resulted in Bourne
Valley holding title to the property. The majority attempts to
distinguish this line of cases by observing that in *Flagg
Brothers*, the parties had a preexisting contractual

relationship. But the Court's holding focuses on "overt official involvement," not preexisting relationships.

Nor can the operation of the HOA Statute alone provide a basis for finding sufficient state action. *Adams* so holds and there is no basis—and the majority offers none—on which we might either distinguish that case or depart from its rule.

Because there has been no "overt official involvement" in this case, I would hold that Wells Fargo has failed to demonstrate the necessary state action that is needed for it to succeed on its Due Process Clause argument.

## II.

Even if there were any state action, Wells Fargo's due process challenge fails because the HOA Statute requires an HOA to provide a mortgage lender with a notice of default, satisfying due process.

Due process demands that "in any proceeding which is to be accorded finality," interested parties must receive "notice reasonably calculated, under all the circumstances, to apprise [them] of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The Supreme Court has held that a lender's mortgage interest is protected as "property" under the Due Process Clause. *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 (1983). In that same case, the Court also held that "constructive notice alone does not satisfy" the demand of due process. *Id.* The issue we confront here is whether the HOA Statute meets these demands.

20   BOURNE VALLEY COURT TRUST V. WELLS FARGO

As the majority points out, most of the notice provisions in the HOA Statute create an opt-in framework, meaning that interested parties will receive notice only if they affirmatively request it. But one of its notice provisions, found in section 116.31168(1) (2005), departs from that framework. That subsection provides that "[t]he provisions of NRS 107.090 apply to the foreclosure of an association's lien as if the deed of trust were being foreclosed." NEV. REV. STAT. § 116.31168(1). In turn, section 107.090(3) provides as follows:

> The trustee or person authorized to record the notice of default shall, within 10 days after the notice of default is recorded and mailed pursuant to NRS 107.080, cause to be deposited in the United States mail an envelope, registered or certified, return receipt requested and with postage prepaid, containing a copy of the notice, addressed to:
>
> (a) Each person who has recorded a request for a copy of the notice; and
>
> (b) Each other person with an interest whose interest or claimed interest is subordinate to the deed of trust.

Thus, in relevant part, the statute requires the "person authorized to record the notice of default" (here, the HOA) to mail a copy of the notice of default to "[e]ach other person with an interest whose interest or claimed interest is subordinate to the deed of trust." A lender like Wells Fargo clearly has an "interest" in the soon-to-be foreclosed property since it has a recorded security interest in it. The lender's

security interest is also "subordinate" to the HOA's lien by virtue of the HOA Statute's superpriority provision. This is the case even though the lender's security interest was recorded first, since the superpriority provision provides that an HOA lien "is . . . prior to all security interests." NEV. REV. STAT. § 116.3116(c) (2005). Further, we must read the term "deed of trust" in section 107.090 to mean an HOA lien since section 116.31168 provides that "[t]he provisions of [section] 107.090 apply to the foreclosure of an association's lien as if a deed of trust were being foreclosed."

In essence, while section 107.090 does not by itself apply to HOA liens, the HOA Statute expressly incorporates section 107.090 so that it applies to HOA liens. And section 107.090's notice provisions require an HOA to send a notice of default to "[e]ach other person" with a subordinate interest. Thus, under the HOA Statute, due process is satisfied because "[e]ach other person with an interest . . . [that] is subordinate to the [HOA lien]" receives "notice, reasonably calculated, to apprise [them] of the pendency of the action." *Mullane*, 339 U.S. at 314.

The majority disagrees with this reading of the statutes. It does so because, according to it, "Bourne Valley's preferred reading would impermissibly render the express notice provisions of Chapter 116 entirely superfluous." In essence, the majority rejects the most obvious reading of the statute by relying on a single canon of construction—the surplusage canon.

The surplusage canon has deep roots in statutory interpretation and arises out of the recognition that "words cannot be meaningless, else they would not have been used." *United States v. Butler*, 297 U.S. 1, 65 (1936). But the canon

is not without limitations. Most importantly here, the surplusage canon cannot overcome straightforward textual meaning. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 176 ("Put to a choice, however, a court may well prefer ordinary meaning to an unusual meaning that will avoid surplusage"). That limitation precludes use of the canon here because there is no reasonable way to interpret sections 116.31168 and 107.090 other than to conclude that they mandate that an HOA provide a mortgage lender with the notice of default. The majority tacitly acknowledges this conclusion by offering no contrary reading of those statutes. Instead, the majority applies the surplusage canon without even attempting to provide a reading of the statutes that is contrary to the one I have provided. This use of the surplusage canon is backwards; courts should not apply the canon without first deciding that there are at least two potential readings of the statute (one that renders parts superfluous and one that does not).

Ironically, the surplusage canon could also work against the majority's position. Reading section 116.31168 as the majority does renders the HOA Statute's command that "[t]he provisions of [section] 107.090 apply to the foreclosure of an association's lien as if a deed of trust were being foreclosed" mere surplusage since refusing to heed section 116.31168's incorporation of section 107.090 renders both sections irrelevant for purposes of the HOA Statute.

A larger problem with the majority's analysis is that it ignores another canon of construction that is at least on a par with the surplusage canon, namely the constitutional doubt canon. The Supreme Court has explained that under the constitutional doubt canon, "[w]hen the validity of an act of the [legislature] is drawn in question, and even if a serious

doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Crowell v. Benson*, 285 U.S. 22, 62 (1932).

As an example of how the constitutional doubt canon works, take the Supreme Court's decision in *National Federation of Independent Business v. Sebelius*, 132 S. Ct. 2566 (2012). There, five justices concluded that the Commerce Clause could not support Congress's enacting of the individual mandate imposed by the Patient Protection and Affordable Care Act of 2010. *Id.* at 2591 (opinion of Roberts, C.J.); *id.* at 2643 (dissenting opinion of Justices Scalia, Kennedy, Thomas, and Alito). But, rather than strike the statute down, the Court found the statute constitutional under Congress's power to tax. *Id.* at 2595–96. The Court explained its rationale for reaching the taxing power issue as follows:

> The question is not whether [reading the statute as being within Congress's power to tax] is the most natural interpretation of the mandate, but only whether it is a "fairly possible" one. As we have explained, every reasonable construction must be resorted to, in order to save a statute from unconstitutionality.

*Id.* at 2594 (internal quotation marks and citations omitted).

While sections 116.31168 and 107.090 of the Nevada Revised Statutes seem to me to be sufficiently straightforward that I would not rely on the constitutional doubt canon in the first instance (again, the majority offers no

24   BOURNE VALLEY COURT TRUST V. WELLS FARGO

interpretation of them that contradicts mine), even if there were a reasonable reading of them that would raise due process concerns, I would apply the constitutional doubt canon and conclude that the constitutional reading is "fairly possible." *Id.* Because it is "fairly possible" to find a reasonable reading of the HOA Statute that renders it constitutional, that construction "must be resorted to." *Id.*

By resorting to a faulty application of the surplusage canon without even applying the constitutional doubt canon, the majority selectively picks and chooses among tools of statutory interpretation so that it can reach its desired outcome. That is not the role of judges. Our role is not to decide whether the HOA Statute was good policy. Indeed, it appears that it was not, as the Nevada legislature has reworked the statute so that the concerns articulated by Wells Fargo are no longer at issue. *See* S.B. 306 (Nev. 2015). But none of that should concern us. We are tasked only with deciding whether the HOA Statute required HOAs to send lenders actual notice. Because its terms leave no doubt that they were required to, we should uphold it.

III.

Wells Fargo's due process challenge fails in multiple respects. First, because there has been no "overt official involvement," there is no state action that would justify reaching the merits of the due process argument. Second, even were there state action, the HOA Statute satisfies due process by requiring HOAs to send lenders a notice of default. Accordingly, I would reject Well Fargo's arguments and affirm the district court's judgment.

## United States Court of Appeals for the Ninth Circuit

### Office of the Clerk
95 Seventh Street
San Francisco, CA 94103

### Information Regarding Judgment and Post-Judgment Proceedings

**Judgment**
-    This Court has filed and entered the attached judgment in your case. Fed. R. App. P. 36.  Please note the filed date on the attached decision because all of the dates described below run from that date, not from the date you receive this notice.

**Mandate (Fed. R. App. P. 41; 9th Cir. R. 41-1 & -2)**
- The mandate will issue 7 days after the expiration of the time for filing a petition for rehearing or 7 days from the denial of a petition for rehearing, unless the Court directs otherwise.  To file a motion to stay the mandate, file it electronically via the appellate ECF system or, if you are a pro se litigant or an attorney with an exemption from using appellate ECF, file one original motion on paper.

**Petition for Panel Rehearing  (Fed. R. App. P. 40; 9th Cir. R. 40-1)**
**Petition for Rehearing En Banc (Fed. R. App. P. 35; 9th Cir. R. 35-1 to -3)**

**(1)   A.   Purpose (Panel Rehearing):**
- A party should seek panel rehearing only if one or more of the following grounds exist:
  - ▶   A material point of fact or law was overlooked in the decision;
  - ▶   A change in the law occurred after the case was submitted which appears to have been overlooked by the panel; or
  - ▶   An apparent conflict with another decision of the Court was not addressed in the opinion.
- Do not file a petition for panel rehearing merely to reargue the case.

**B.   Purpose (Rehearing En Banc)**
- A party should seek en banc rehearing only if one or more of the following grounds exist:

> ► Consideration by the full Court is necessary to secure or maintain uniformity of the Court's decisions; or

> ► The proceeding involves a question of exceptional importance; or

> ► The opinion directly conflicts with an existing opinion by another court of appeals or the Supreme Court and substantially affects a rule of national application in which there is an overriding need for national uniformity.

**(2)   Deadlines for Filing:**
- A petition for rehearing may be filed within 14 days after entry of judgment.  Fed. R. App. P. 40(a)(1).
- If the United States or an agency or officer thereof is a party in a civil case, the time for filing a petition for rehearing is 45 days after entry of judgment.  Fed. R. App. P. 40(a)(1).
- If the mandate has issued, the petition for rehearing should be accompanied by a motion to recall the mandate.
- *See* Advisory Note to 9th Cir. R. 40-1 (petitions must be received on the due date).
- An order to publish a previously unpublished memorandum disposition extends the time to file a petition for rehearing to 14 days after the date of the order of publication or, in all civil cases in which the United States or an agency or officer thereof is a party, 45 days after the date of the order of publication.  9th Cir. R. 40-2.

**(3)   Statement of Counsel**
- A petition should contain an introduction stating that, in counsel's judgment, one or more of the situations described in the "purpose" section above exist.  The points to be raised must be stated clearly.

**(4)   Form & Number of Copies (9th Cir. R. 40-1; Fed. R. App. P. 32(c)(2))**
- The petition shall not exceed 15 pages unless it complies with the alternative length limitations of 4,200 words or 390 lines of text.
- The petition must be accompanied by a copy of the panel's decision being challenged.
- An answer, when ordered by the Court, shall comply with the same length limitations as the petition.
- If a pro se litigant elects to file a form brief pursuant to Circuit Rule 28-1, a petition for panel rehearing or for rehearing en banc need not comply with Fed. R. App. P. 32.

- The petition or answer must be accompanied by a Certificate of Compliance found at Form 11, available on our website at www.ca9.uscourts.gov under *Forms.*
- You may file a petition electronically via the appellate ECF system. No paper copies are required unless the Court orders otherwise. If you are a pro se litigant or an attorney exempted from using the appellate ECF system, file one original petition on paper. No additional paper copies are required unless the Court orders otherwise.

**Bill of Costs (Fed. R. App. P. 39, 9th Cir. R. 39-1)**
- The Bill of Costs must be filed within 14 days after entry of judgment.
- See Form 10 for additional information, available on our website at www.ca9.uscourts.gov under *Forms.*

**Attorneys Fees**
- Ninth Circuit Rule 39-1 describes the content and due dates for attorneys fees applications.
- All relevant forms are available on our website at www.ca9.uscourts.gov under *Forms* or by telephoning (415) 355-7806.

**Petition for a Writ of Certiorari**
- Please refer to the Rules of the United States Supreme Court at www.supremecourt.gov

**Counsel Listing in Published Opinions**
- Please check counsel listing on the attached decision.
- If there are any errors in a published <u>opinion</u>, please send a letter **in writing within 10 days** to:
  - ► Thomson Reuters; 610 Opperman Drive; PO Box 64526; St. Paul, MN 55164-0526 (Attn: Jean Green, Senior Publications Coordinator);
  - ► and electronically file a copy of the letter via the appellate ECF system by using "File Correspondence to Court," or if you are an attorney exempted from using the appellate ECF system, mail the Court one copy of the letter.

**Form 10. Bill of Costs** ....................................................................................................................*(Rev. 12-1-09)*

# United States Court of Appeals for the Ninth Circuit

# BILL OF COSTS

This form is available as a fillable version at:
*http://cdn.ca9.uscourts.gov/datastore/uploads/forms/Form%2010%20-%20Bill%20of%20Costs.pdf*.

*Note:* If you wish to file a bill of costs, it MUST be submitted on this form and filed, with the clerk, with proof of service, within 14 days of the date of entry of judgment, and in accordance with 9th Circuit Rule 39-1. A late bill of costs must be accompanied by a motion showing good cause. Please refer to FRAP 39, 28 U.S.C. § 1920, and 9th Circuit Rule 39-1 when preparing your bill of costs.

|  | v. |  | 9th Cir. No. |  |

The Clerk is requested to tax the following costs against:

| Cost Taxable under FRAP 39, 28 U.S.C. § 1920, 9th Cir. R. 39-1 | REQUESTED *(Each Column Must Be Completed)* | | | | ALLOWED *(To Be Completed by the Clerk)* | | | |
|---|---|---|---|---|---|---|---|---|
|  | No. of Docs. | Pages per Doc. | Cost per Page* | TOTAL COST | No. of Docs. | Pages per Doc. | Cost per Page* | TOTAL COST |
| **Excerpt of Record** |  |  | $ | $ |  |  | $ | $ |
| **Opening Brief** |  |  | $ | $ |  |  | $ | $ |
| **Answering Brief** |  |  | $ | $ |  |  | $ | $ |
| **Reply Brief** |  |  | $ | $ |  |  | $ | $ |
| **Other\*\*** |  |  | $ | $ |  |  | $ | $ |
|  |  |  | **TOTAL:** $ |  |  |  | **TOTAL:** $ |  |

\* *Costs per page*: May not exceed .10 or actual cost, whichever is less. 9th Circuit Rule 39-1.

\*\* *Other*: Any other requests must be accompanied by a statement explaining why the item(s) should be taxed pursuant to 9th Circuit Rule 39-1. Additional items without such supporting statements will not be considered.

Attorneys' fees **cannot** be requested on this form.

*Continue to next page*

**Form 10. Bill of Costs -** *Continued*

I, [                    ] , swear under penalty of perjury that the services for which costs are taxed were actually and necessarily performed, and that the requested costs were actually expended as listed.

Signature [                    ]

("s/" plus attorney's name if submitted electronically)

Date [                    ]

Name of Counsel: [                    ]

Attorney for: [                    ]

---

*(To Be Completed by the Clerk)*

Date [                    ]          Costs are taxed in the amount of $ [                    ]

Clerk of Court

By: [                    ] , Deputy Clerk